[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this matter are not in dispute. The plaintiff, whose maiden name is Janeen Stern, and the defendant, were married in Bedford, New York on September 24, 1989. The plaintiff has resided continuously in the State of Connecticut for at least twelve (12) months immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage, Joshua Gabriel Baron, born July 3, 1991. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. The court finds the following additional facts.
The plaintiff was born on June 21, 1962. The cost to provide health insurance for the plaintiff and the minor child by the defendant, after dissolution of their marriage, is $431.61 monthly, allocated $228 for the minor child and $203.39 monthly for the plaintiff. CT Page 14275
At the time of the parties' marriage, the plaintiff had completed two years of college and was employed by Hallmark Card store in the Danbury Mall, Danbury, Connecticut. She continued that employment for approximately one year after the marriage, working on a full-time basis. She was then employed in a clothing store for approximately five months as an assistant manager. She has not been employed since approximately February, 1991, when she was approximately five months pregnant. Her last employment paid her an annual salary in the range of $18,500. Her present employment is that of baking goods. She does that once a week, doing the baking at home.
The plaintiff owned a condominium in Los Angeles, when the parties married, that she purchased on November 4, 1987. She lived in that condominium for a short period of time. The purchase price was $94,900. The parties are in dispute as to the fair market value of that condominium. The court finds that its fair market value is $80,000, and that it has a mortgage balance of $82,613, with a negative equity of $2613. A 5 percent down payment was provided by her father, with the balance being financed through a mortgage. The condominium is rented out. The plaintiff's mother, sister and brother-in-law reside in California, and handle the income and expenses on the condominium. They do not provide her with an accounting of profit or losses. She has never paid any money for the condominium expenses. The condominium is in the plaintiff's name only. The plaintiff also has two mutual funds that were set up by her father for the plaintiff and her sister. One fund is a Decatur Fund with an initial $10,500 deposit by her father on July 28, 1986, and the second is a Mutual Shares Fund, with an initial $10,000 deposit by her father on June 3, 1988. Those two funds are in the plaintiff's maiden name and her sister's name, with each owning a 50 percent interest. The present fair market value of the Decatur Fund is $4807.95, of which the plaintiff owns a one-half interest or $2403.98. The present value of the Mutual Shares Fund, as of October 13, 1995 is $26,396.43, of which the plaintiff owns a one-half interest or $13,198.22. The plaintiff used a withdrawal that she made from the Mutual Shares Fund toward paying part of her attorney's fees, and her father has also paid part of her attorney's fees. She owes a balance of $7,500 on attorney's fees. On November 1, 1989, the plaintiff withdrew $13,000 from the Decatur Fund. The money was used toward a down payment on a Norwalk condominium that the parties were looking to purchase. The sale fell through and the parties were CT Page 14276 able to receive back a net of $6000 after payment of attorney's fees in November of 1990. The plaintiff also owned an automobile when the parties' married, and also had approximately $5,000 in credit card debts. When the parties became engaged, the defendant purchased an engagement ring for the plaintiff for approximately $3,000. Shortly after the plaintiff filed for divorce, the ring was missing and the parties received between $13,700 and $13,800 from the insurance company insuring the ring. That check has not been cashed. The plaintiff also owned real estate in Sufferin, New York, at the time the parties' married. It was sold after the marriage with the plaintiff receiving approximately $28,000 to $29,000 net from the sale.
The plaintiff is a party to a class action arising out of silicon breast implants. She estimates the range of settlement from that case to be approximately $200,000.
The plaintiff owns a 1994 Nissan that was purchased between December, 1993 and January, 1994. Her father told her to trade in her old vehicle and that he would pay the balance that was due to purchase the Nissan. Its fair market value is $15,000. The vehicle is in the defendant's name. On December 8, 1993, the plaintiff's father provided $10,000 to the plaintiff that was to be used for her to trade in the vehicle that she was driving and purchase another vehicle free and clear of any liens. The defendant used $3000 of that money towards purchasing the vehicle that he now operates with the result being that the plaintiff has an approximate $3000 lien on her vehicle. The defendant's father provided an additional $2945.20 on January 15, 1994, with a check payable to Bob Sharp Motors that was to be used to pay the balance in full on the plaintiff's vehicle. The defendant told him that the funds would be used to pay the plaintiff's vehicle in full. The plaintiff is presently receiving $185 weekly from her father to supplement her financial needs. The defendant is paying the mortgage, credit cards and $100 weekly to the plaintiff for food and miscellaneous items. The plaintiff also withdrew $3,000 from the Mutual Shares Fund to pay for the accountant to review the defendant's books and records. In the event that the plaintiff needs more than $185 weekly ($800 monthly) in order to meet her current expenses, her father gives her the additional money. The plaintiff has a business checking account for her catering business that has a balance as of September 15, 1995 of $844.76. That account does not show on her financial affidavit. The plaintiff's affidavit shows $30 net weekly from her catering business. The name of the plaintiff's CT Page 14277 catering business is Chanterelle. The $30 weekly is the net profit with the weekly gross income being approximately $50. The plaintiff has four liabilities; namely:
1. Citibank VISA with a balance of $8,863.76. The defendant withdrew $8,500 against this credit card.
2. MBNA with a balance of $4,564. This account was used for the purchase of some household furniture, clothing and other household items.
3. Bank of New York VISA with a balance of $5,793. Five thousand ($5,000) dollars on this account was a check written by the defendant that was used for his dental practice.
4. SIGNET with a balance of $4,113. This credit card was used by the plaintiff for household expenses and the defendant did not use it.
The defendant's present work hours are Mondays, Wednesdays, Thursdays and Fridays from 8:00 a.m. to 5:00 p.m., and Tuesdays and alternating Saturdays from 10:00 a.m. to 7:00 p.m. When the parties' married, the defendant had completed four years of college, four years of dental school and had completed a one year residency. He was employed full-time by the Dental Associates. He remained in that employment for approximately one year after the parties' married. His next employment was in White Plains, New York, working in the dental field. He was then unemployed for a few weeks. His employment in White Plains was full-time. He was then employed for an approximate eight to nine month period by a dentist who was seeking to sell his practice, but the plaintiff felt the sale price was too high. He then had two separate part-time employments in the dental field. He then purchased a dental practice. The source of the money to purchase the dental practice was from the plaintiff's father, who provided a $25,000 gift, and the defendant's father, who provided a loan. The parties also obtained a second mortgage on the family home that was used to secure a loan to purchase the dental practice. The plaintiff cosigned on that loan. The loan was a home equity loan of $125,000 that was taken out on September 1, 1992. The defendant has been continuously engaged in dentistry since the purchase of the dental practice on September 1, 1992 from Robert G. Dolce, D.D.S. The defendant keeps all the financial records regarding his dental practice and prepares his own income tax returns. The defendant signed the purchase agreement with Dr. Dolce, on CT Page 14278 September 1, 1992, to purchase Dr. Dolce's general dentistry practice. The total purchase price was $125,000. The allocation of the purchase price was as follows: (a) furniture, fixtures, dental equipment, instruments, apparatus — $50,000; (b) patient records $50,000; (c) goodwill — $5,000; (d) supplies — $20,000. The defendant borrowed $125,000 from Union Trust on September 1, 1992 to complete the purchase. The payments on the promissory note commenced October 15, 1992, with a final payment on September 15, 1997. The promissory note is secured by a mortgage on properties owned by the parties at 13 Brittania Drive, Danbury, Connecticut, also known as Unit No. 8. The defendant also executed, in connection with the purchase of the dental practice from Robert Dolce, a promissory note on September 1, 1992, in the face amount of $35,000. The dental practice makes the payments on that note. The payments are monthly payments in the amount of $233.33 each, that commenced October 1, 1992 through September 1, 1993, and then monthly payments of $854.45 each, commencing October 1, 1993, with a final payment due September 1, 1997. The $35,000 was borrowed for working capital for the dental practice. The defendant presently has approximately 800 active patients that include the patients he acquired through Dr. Dolce's practice, as well as new patients. He presently has six employees, one of whom is full-time. Since the date the defendant purchased the practice, he has invested in new equipment with approximately $20,000 invested in 1993; approximately $5,000 to $10,000 in 1994; approximately $5,000 to $10,000 in 1995. The business has approximately $50,000 in accounts receivables of which 30 percent to 40 percent are not collectable.
When the parties' married, the defendant owned two motor vehicles and had $12,000. He also had student loans and credit card debts when the parties' married.
The defendant owns a 1990 Nissan that he purchased in January of 1994 when the plaintiff purchased her vehicle. There was a $3000 down payment on the vehicle which is the approximate balance of the loan due on the plaintiff's 1994 Nissan. The $3000 down payment was used from funds that the plaintiff's father provided in order for her to purchase her vehicle free and clear of any liens. The defendant also owns a 1991 Mazda, that has a fair market value of $8700, and a loan of $7000, and an equity of $1700. He also owns a 1970 Chevrolet that he claims has an unknown value. He acquired it in 1985, at a cost of $50, and has paid $8000 in restoring it. He also owns a motorcycle that is not shown on his financial affidavit that has a fair market value of CT Page 14279 between $800 and $900. The second mortgage on the family home is presently being paid by the defendant's dental practice. The parties are in dispute as to the defendant's income from his dental practice. His financial affidavit shows his gross weekly income as $865. That was based on his 1994 income tax return and did not take into consideration his 1995 income from his dental practice. The balance owed to Union Trust on the promissory note, as of October 1, 1995, is $56,084.21. The balance owed on the promissory note to Dr. Dolce, as of October 1, 1995, is $18,163. The balance due on a capital leasing equipment loan, as of October 1, 1995, is $13,759.45. The parties are in dispute as to the fair market value of the defendant's dental practice. The court finds that the fair market value is $122,000, which includes the $59,316 in gross accounts receivables. The court finds, from all of the evidence, that the defendant's present gross weekly income from his dental practice is $1600. The support, alimony and property orders, hereinafter entered, are based in part on that weekly income, less federal and state income taxes. The defendant has term life insurance in the face amount of $300,000.
The plaintiff had surgery in November of 1994. Her father advanced $7,000 to her, on October 15, 1994, to cover the cost of the surgery. The parties received a health insurance reimbursement check of $6,500, which was turned over to her father. In addition to the $25,000 that the plaintiff's father gave for the purchase of a dental practice, he has also provided funds for bonds for the minor child, as well as for the purchase of vehicles for the plaintiff, as well as other funds. There are presently bonds in the name of the minor child, purchased by the plaintiff's father, with a value of $6,525. He also purchased a bond when the child was one year for $19,908, that was to be used for the minor child, that will have a value of approximately $72,000 when the child reaches age eighteen (18). He also purchased a $4,000 bond for the child in June of 1995, which the parties have been unable to locate.
Shortly after the parties' married, the plaintiff's father commenced making gifts of his $400 monthly pension, alternating that $400 between the plaintiff and her sister. He also provided $4000, on November 11, 1994, for the plaintiff, to be used for attorney's fees, and an additional $3500, in March of 1995, to be used for attorney's fees.
From the evidence presented, the court finds that the CT Page 14280 defendant is primarily responsible for the cause of the breakdown of the marriage.
The defendant has a good relationship with the minor child. The minor child is presently enrolled in private nursery school. This is the second year that the child has been in that school. The child attends school Monday through Friday from 8:30 a.m. to 11:30 a.m. There is a present pendente lite order, coded No. 126, that was entered, by stipulation, on August 24, 1995, in which the defendant agreed to pay the tuition for the minor child at the private school for the calendar year 1995-1996, and at the time of the final dissolution hearing, the tuition payments were to be considered in determination of child support. Both parties have completed a parent education class. The plaintiff intends to enroll the minor child in public school commencing first grade. The present kindergarten arrangement was chosen by the parties in order to provide the child with stability, as well as providing him with a better educational learning environment and teaching him Hebrew. The cost of one year tuition at the private school for the minor child is $3,635. In August, 1995, the defendant paid $1,792.50 toward the private school tuition for the minor child. This is in addition to the $300 deposit that he made.
The parties' jointly own a condominium which they purchased on June 8, 1990 for $172,500. It was financed in part with a mortgage with a face amount of $146,600. The parties are in dispute as to the source of the balance of the purchase price of $25,900. The defendant's father loaned the parties $15,875 to purchase the condominium they now own. That loan has since been repaid. The remaining approximate $10,000, needed to complete the purchase of the condominium, came from the parties' checking account. On June 11, 1990, after the parties moved into the condominium, the plaintiff's father gave the parties $11,000. That $11,000 went into the parties' joint checking account and was used to pay expenses of the parties. On September 7, 1990, he made a gift of $2000, payable to the defendant, that was to be used for an addition to the condominium. The fair market value of the condominium is $190,000, it has a first mortgage of $139,000, with an equity of $51,000.
The court has considered the provisions of § 46b-82, regarding the issues of alimony; has considered the provisions of § 46b-81 (c), regarding the issues of property division; has considered the provisions of § 46b-56 and § 46b-56a, regarding the issue of custody and visitation; has considered the CT Page 14281 provisions of § 46b-84 and the child support guidelines, regarding the issue of support; and has considered the provisions of § 46b-62, regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY AND VISITATION
1. The parties appeared before the court and entered into an agreement approving the recommendations of the Family Relations report completed on November 3, 1995. Those recommendations are approved of and orders are entered in accordance with those recommendations. The parties also signed a stipulation on November 13, 1995, providing for additional visitation, which the court approves of, and enters orders in accordance with that stipulation. The court also enters an order of joint custody with primary physical residence with the plaintiff.
2. The plaintiff is not to permanently remove the minor child from the State of Connecticut prior to giving the defendant at least ninety (90) days advanced written notice, by registered mail, return receipt or certified mail, return receipt of such proposed move.
C. BY WAY OF SUPPORT
1. The court orders that the defendant pay to the plaintiff, by way of support, the sum of $219 weekly, which is in accordance with the support guidelines.
2. The court orders that the defendant maintain health insurance for the benefit of the minor child, and that the parties divide equally any unreimbursed or uncovered health expenses for the minor child.
3. The defendant shall have the right to take the minor child as an exemption for federal and state income tax purposes for each calendar year that he is current in his support payments, at the end of such calendar year.
4. The defendant is ordered to pay whatever tuition is CT Page 14282 remaining in order for the minor child to complete nursery school for the calendar year 1995-1996.
D. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $300 per week. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the plaintiff; (d) September 1, 1998. The weekly alimony is non-modifiable as to term. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
2. The defendant is also ordered to pay to the plaintiff a lump sum payment of $50,000 on September 1, 1998. The lump sum payment is non-modifiable as to term or amount. Her need for alimony will therefore not be as great upon the receipt of that payment. In the event that the payment is not made, then the weekly alimony payments will continue until such time as the lump sum payment is made, without the defendant receiving credit for the additional weekly payments.
3. The defendant is ordered to maintain life insurance in the face amount of $200,000, naming the plaintiff as beneficiary for so long as there is an outstanding alimony order and/or support. The face amount of the life insurance may be reduced annually, commencing one year from the date of this decision by $15,000. Commencing one year from the date this decision is filed, and annually thereafter, he is to provide to the plaintiff written proof that such policy is in full force and effect.
4. The defendant is to pay the second mortgage on the condominium at 13 Brittania Drive, Danbury, Connecticut and hold the plaintiff harmless therefrom. This order is in the nature of alimony and is therefore non-dischargeable in bankruptcy. It is non-modifiable.
5. The defendant is to provide health insurance for the plaintiff under COBRA for the maximum period allowed by law at the sole expense of the plaintiff.
E. BY WAY OF PROPERTY ORDERS
1. The court orders that the defendant transfer to the plaintiff all of his right, title and interest in the condominium CT Page 14283 located at 13 Brittannia Drive, Danbury, Connecticut, by January 31, 1996. The plaintiff is to pay the first mortgage on the property and hold the defendant harmless therefrom. The purpose of the order is to provide for a residence for the plaintiff and the minor child.
2. All of the plaintiff's right, title and interest in the condominium at Los Angeles, California, is awarded to the plaintiff.
3. The 1994 Nissan, shown on the plaintiff's financial affidavit, is awarded to the plaintiff. The defendant is ordered to pay the loan balance of approximately $3,000 on the vehicle, and hold the plaintiff harmless therefrom The defendant is ordered to transfer title to the vehicle to the plaintiff by January 31, 1996.
4. All household furnishings at the condominium in Danbury, Connecticut are awarded to the plaintiff.
5. The insurance proceeds from the plaintiff's ring is awarded to the plaintiff.
6. The plaintiff's interest in the Decatur Income Fund and the Mutual Fund Shares, shown on the her financial affidavit, are awarded to the plaintiff.
7. The plaintiff's claim in the class action arising from a silicone breast implant is awarded to the plaintiff, except for 10 percent of the net recovery thereof which is awarded to the defendant.
8. All of the bonds that were gifts from the plaintiff's father for the benefit of the minor child are awarded to the plaintiff. All bonds in the minor child's name are are to be held by the plaintiff for the benefit of the minor child.
9. The liabilities shown on the plaintiff's financial affidavit are ordered to be paid as follows. The plaintiff is to pay the MBNA and the SIGNET credit card, and hold the defendant harmless. The defendant is to pay the Citybank VISA credit card and the Bank of New York VISA credit card, and hold the plaintiff harmless.
10. All of the defendant's interest in his dental practice is CT Page 14284 awarded to the defendant.
11. All of the liabilities shown on the defendant's financial affidavit are to be paid by the defendant, and he is to hold the plaintiff harmless therefrom.
12. The plaintiff's business checking account is awarded to the plaintiff.
13. The plaintiff is to hold the defendant harmless for all moneys advanced to the plaintiff and/or to the defendant by the plaintiff's father during the time that the parties were married. The defendant is to hold the plaintiff harmless for all moneys advanced by the defendant's father to the plaintiff or the defendant during the time the parties were married
14. The 1990 Chevrolet is ordered assigned to the plaintiff. The defendant is to execute whatever documents are required to complete the assignment by January 31, 1996.
15. The 1990 Nissan, 1991 Mazda and motorcycle, are awarded to the defendant.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The parties are ordered to exchange copies of their federal and state income tax returns within thirty (30) days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding support order and/or alimony order. In addition, the defendant is to provide to the plaintiff with a copy of all tax returns filed regarding his dental practice within thirty (30) days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding support order and/or alimony order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days, and send it to counsel for the defendant for signature and filing. CT Page 14285
Axelrod, J.